**AUTO TRANSPORTS, Inc. v. UNITED STATES et al.**

Civ. No. 5009.

United States District Court
W. D. Oklahoma.

Nov. 2, 1951.

Mosteller, McElroy & Fellers, Oklahoma City, Okl., and Wrape & Hernley, Memphis, Tenn., for plaintiff.

Richardson, Shartel & Cochran, Oklahoma City, Okl., and Henry M. Hogan, Detroit, Mich., for intervener.

Frederick R. Hanlon, Trial Atty., Dept. Justice, Washington, D. C., Robt. E. Shelton, U. S. Atty., Oklahoma City, Okl., and Samuel R. Howell, Asst. Chief Counsel, I. C. C., Washington, D. C. (H. G. Morison, Asst. Atty. Gen., James E. Kilday, John F. Baecher, Spec. Assts. to the Atty. Gen., on brief), for defendants.

Before MURRAH, Circuit Judge, and VAUGHT and WALLACE, District Judges.

MURRAH, Circuit Judge.

Pursuant to a show cause order dated November 1, 1949, the Interstate Commerce Commission, on May 17, 1950, entered its order suspending Auto Transport's right to operate as a contract motor carrier under its permit issued in MC–106553. After denial of a petition to vacate and reconsider the suspension order, which finally became effective December 15, 1950, Auto Transport brought this action against the United States and the Interstate Commerce Commission pursuant to Section 17(9), Title 49 U.S.C.A., to set aside and enjoin the enforcement of the order. The General Motors Corporation, Auto Transport's only shipper, intervened in support of the complaint.

This three judge court, as constituted under Section 2284, Title 28 U.S.C., is vested with jurisdiction of the action under Section 1336, Title 28 U.S.C., 62 Stat. 931, and Sections 2321–2325, Title 28 U.S.C.

A temporary restraining order was issued on December 12, 1950, before the final effective date of the suspension order, and by agreement of the parties, has been continued in effect pending disposition of the cause on its merits.

On July 12, 1946, Auto Transport was granted temporary authority to transport new automobiles over irregular routes from points in Wyandotte County, Kansas to designated points in fifteen states. On August 27, 1947, the Commission issued Auto Transport a permit to perform the same service. Concurrently with the issuance of the temporary authority in 1946, Auto entered into a contract with the intervenor, General Motors, providing for the transportation of its new automobiles, automobile cabs and bodies from its plant in Wyandotte County, Kansas, to the designated points in the temporary authority and subsequent permit. The contract, filed with the Commission in accordance with Section 320(a), Title 49 U.S.C.A. provided for the rates and charges for the transportation of the automobiles to the designated points. Auto has never had any other contract with any other shipper for the transportation of property under its temporary authority or permit.

Before the commencement of the operation, Auto also filed with the Commission a schedule of minimum rates and charges in accordance with Section 318(a), Title 49 U.S.C.A. This schedule of minimum rates and charges was the same as those provided in the contract. The schedule of rates has never been revised or amended, but the contract rate has been amended to revise the rates and charges upward from time to time to meet increased cost, so that at the time of the issuance of the show cause order, the contract rates were not the minimum rates actually maintained and charged for the services performed under the permit.

Section 318(a), Title 49 U.S.C.A., provides in presently material part that "It shall be the duty of every contract carrier * * * to file with the Commission * * * schedules containing the minimum rates or charges of such carrier actually maintained and charged for the transportation of passengers or property in interstate or foreign commerce". And, "No such contract carrier, unless otherwise provided by this chapter, shall engage in the transportation of passengers or property in interstate or foreign commerce unless the minimum charges for such transportation by said carrier have been published, filed, and posted in accordance with the provisions of this chapter."

Before the issuance of the show cause order, and by letter dated December 14, 1948, the Commission called attention to the variance in the scheduled and contract rates and charges, and pointed out that Section 318(a) required a contract carrier by motor vehicle to file and publish a schedule of minimum rates and charges actually

maintained and charged any one shipper under its permit; that since General Motors was its only shipper, it was required to file and publish a schedule of minimum rates actually charged General Motors under its contract. And, Auto was accordingly instructed to amend its schedule of minimum rates to conform to the contract rates actually maintained and charged for the transportation performed for its shipper. When Auto refused to comply, the show cause order was issued. Auto moved to vacate the order, contending that Section 318(a) did not authorize the Commission to require it to revise its published schedule of minimum rates to conform to its contract rates.

In its report, pursuant to which the order of suspension was entered, the Commission referred to a letter dated January 29, 1940, which its legislative committee has transmitted to the appropriate Congressional Committee, calling attention to the fact that "the words 'actually maintained and charged' are not in Section 218(2), and under that sub-section, schedules may be filed containing minimum charges which are fictitious, i. e., which never have been and never will be charged. The words thus inserted will make it necessary to include in the schedules the lowest rates, fares and charges which are actually assessed, and hence the schedules will give the competing common or contract carrier adequate notice of the competition by which they are confronted." Our attention is directed to the Congressional conference report on the Transportation Act of 1940. See Rep. 2832, 76th Congress, p. 79, reflecting the views stated in the letter. Then the Commission points to the fact that Section 318(a), as thus amended, became effective on September 18, 1940. It went on to state that since its effective date, the Commission had consistently construed Section 318(a) as requiring contract carriers to file and publish schedules showing the lowest rates or charges actually maintained for the transportation in the carrier's contract; and, imposing upon the Commission the duty of requiring schedules of contract carriers to contain minimum rates and charges actually maintained and charged. And see Ship-

man Bros. Contract Charges Between California and Idaho, 30 M.C.C. 229; Contract Minimum Charges from and to Baltimore, Md., 32 M.C.C. 273; Petroleum Products from Wyoming Points to Missoula, Mont., 32 M.C.C. 453; In the Matter of Filing of Contracts by Contract Carriers by Motor Vehicle, 41 M.C.C. 572.

The complainant takes the position that this construction of 318(a) cuts across the established transportation policy to recognize and treat common carriers and contract carriers by motor vehicle as two separate classes of transportation, as to each of which distinct and separate standards of rate regulation is applicable. See House Conference Rep. 2832, 76th Congress. Emphasis is laid upon the distinctly different duties imposed upon a common carrier and a contract carrier by the regulatory scheme. As for example, the inflexible duty of a common carrier to establish and maintain reasonable rates and charges, provide adequate service, file and publish tariffs containing such rates and charges which cannot be changed except upon thirty days' notice, all of which are subject to revision and regulation by the Commission, Secs. 316, 317, 49 U.S.C.A., whereas a contract carrier is required only to file a schedule of reasonable minimum rates, and is free to contract for any rates or charges above such minimum reasonable rates, subject to change without notice.

The effect of the Commission's order under attack is said to destroy the distinctly different standards of rate regulations applicable to contract and common carriers by motor vehicle, contrary to and in derogation of established transportation policy. Particularly, the ultimate effect of the order is said to require the contract carrier to maintain and charge the exact rates filed and published in its schedule of minimum rates, resulting in a rigidly fixed rate which, under applicable regulations, must be filed and posted at least thirty days prior to the effective date. See Rules 49 C.F.R. 187.-8(b).

It is true that the Commission's order has the effect of construing Section 318(a) to require a contract carrier to file and publish a schedule of rates and charges which

it actually maintains and charges any one shipper, and since Auto has a contract under its permit with only one shipper, the order has the rather anomalous effect of requiring it to actually charge that shipper the rates filed and published in its schedule. In other words, the contract rate must be the reasonable minimum scheduled rate, or vice versa. But, this does not prohibit Auto and intervenor from contracting for any rate they choose, so long as they file the schedule showing such rate to be the posted minimum reasonable rate.

Section 318(a) was deliberately amended to remove what the Commission thought was an evil inherent in the disparity between the posted schedule rate and the unpublished contract rate. The order of the Commission is in obedience to the Congressional mandate. If the requirement for posting the schedule of minimum rates at least thirty days prior to the effective date works a hardship, the Commission is authorized to ameliorate it. In any event, the requirement does not destroy the validity of the Commission's order.

Relief is denied and the action is dismissed.

VAUGHT, District Judge (dissenting).

It is with reluctance that I disagree with my associate judges as to the majority opinion, but my conviction in my position is so firm that I cannot do otherwise.

The majority opinion contains a brief, but I think correct, statement of the facts in this case and it is not necessary to repeat them in this opinion.

There appears to be only one question for determination by this court, i. e., whether or not when a schedule is filed by the contract carrier containing the minimum rates or charges of such carrier actually maintained and charged at the time it is filed, is the carrier then required under the law to file a new schedule each time it revises by contract the rate upward?

An examination of the statute itself becomes necessary. The original statute under consideration, on October 1, 1935, used only this language: "It shall be the duty of every contract carrier by motor vehicle to file with the Commission, publish, and keep open for public inspection, in the form and manner prescribed by the Commission, *schedules* or, in the discretion of the Commission, copies of contracts *containing the minimum charges* of such carrier for the transportation of passengers or property in interstate or foreign commerce, * * *." (Emphasis supplied.)

It is conceded that under this statute, as then in force, the filing of the minimum rate charged was sufficient to satisfy the statute. It is contended by the defendants, however, that under that statute a contract carrier could file a minimum rate under the schedule of rates which would be a "fictitious rate," or "paper rate", which would really have no relation to charges received by the carrier, and "which never have been and never will be charged." The 76th Congress, in 1940, amended the statute for the purpose of curing that situation, and the amendment, 49 U.S.C.A. § 318(a), effective September 18, 1940, provided that the schedules must contain "the *minimum rates or charges* of such carrier *actually maintained and charged* for the transportation * * *." (Emphasis supplied.)

A brief reference to the history of this amendment becomes necessary. When the amendment was before Congress, Commissioner Joseph B. Eastman, Chairman of the Commission's Legislative Committee, on January 29, 1940, addressed a letter to the Chairman of the Senate Committee on Interstate Commerce, and the Chairman of the House Committee on Interstate and Foreign Commerce, recommending among other changes in the Motor Carrier Act that Section 218(a) be amended by inserting, after the clause providing that contract carriers shall file with the Commission their schedules of minimum rates, the words, "schedules of minimum rates, fares, or charges actually maintained and charged." The letter also stated that the amendment suggested would preclude "minimum charges which are fictitious, i. e., which never have been and never will be charged." And it is a reasonable conclusion that Congress enacted the amendment

in order to require minimum rates which were reasonable. Certain sections of the statute, as amended in 1940, must be considered.

49 U.S.C.A. § 318(a) reads: "It shall be the duty of every contract carrier by motor vehicle to establish and observe reasonable minimum rates and charges for any service rendered or to be rendered in the transportation of passengers or property or in connection therewith, and to establish and observe reasonable regulations and practices to be applied in connection with said reasonable minimum rates, fares, and charges. It shall be the duty of every contract carrier by motor vehicle to file with the Commission, publish, and keep open for public inspection, in the form and manner prescribed by the Commission, schedules containing the minimum rates or charges of such carrier actually maintained and charged for the transportation of passengers or property in interstate or foreign commerce, and any rule, regulation, or practice affecting such rates or charges and the value of the service thereunder. No such contract carrier, unless otherwise provided by this part, shall engage in the transportation of passengers or property in interstate or foreign commerce unless the minimum charges for such transportation by said carrier have been published, filed, and posted in accordance with the provisions of this part. No reduction shall be made in any such charge either directly or by means of any change in any rule, regulation, or practice affecting such charge or the value of service thereunder, except after thirty days' notice of the proposed change filed in the aforesaid form and manner; but the Commission may, in its discretion and for good cause shown, allow such change upon less notice, or modify the requirements of this subsection with respect to posting and filing of such schedules, either in particular instances, or by general order applicable to special or peculiar circumstances or conditions. * * *"

Section 320(a) reads: "* * * The Commission may also require any motor carrier or broker to file with it a true copy of any contract, agreement, or arrangement between such carrier and any other carrier or person in relation to any traffic affected by the provisions of this chapter. The Commission shall not, however, make public any contract, agreement, or arrangement between a contract carrier by motor vehicle and a shipper, or any of the terms or conditions thereof, except as a part of the record in a formal proceeding where it considers such action consistent with the public interest: Provided, That if it appears from an examination of any such contract that it fails to conform to the published schedule of the contract carrier by motor vehicle as required by section 318(a) of this title, the Commission may, in its discretion, make public such of the provisions of the contract as the Commission considers necessary to disclose such failure and the extent thereof."

It will be noted that the statute covers three propositions: (1) that the contract carrier is required to file with the Commission, publish and keep open for public inspection, in the form and manner prescribed by the Commission, schedules containing the minimum rates or charges of such carrier actually maintained and charged; (2) that no reduction may be made in any such charge either directly or by means of any change in any rules, regulation or practice affecting such charge or the value of service thereunder, except after thirty days' notice of the proposed change: and the 3rd proposition has reference to the actual contract between the contract carrier and the shipper, and the statute provides that the Commission may also require any motor carrier or broker to file with it a true copy of any contract, agreement or arrangement between such carrier and any other carrier or person in relation to any traffic affected. *The Commission shall not, however, make public any contract, agreement or arrangement between a contract carrier by motor vehicle and a shipper.*

It will be noted that under the first proposition the schedule containing the minimum rates or charges must be published and kept open for public inspection, and under the third proposition the contract between the carrier and the shipper reflecting the actual

rate charged shall not be made public by the Commission.

In the instant case the schedule containing the minimum rates or charges was filed in 1946, and at the same time, the contract between the plaintiff and its shipper also was filed containing the actual rate charged. In this case the rate charged was the same as the minimum rate.

The significant feature of this statute is that it expressly prohibits any reduction below the minimum rate except after thirty days' notice of the proposed change, but nowhere in the Act is there any prohibition of an increase in the charges, so long as the increased charges are higher than the minimum rate.

The plaintiff contends vigorously that since it complied with the portion of the Act requiring it to file a schedule containing its minimum rate, that feature of the statute was complied with, and that since with every change it has made upward, it has filed a copy of the contract showing such changes with the Commission, and therefore that provision of the statute has been met. The defendant, however, contends that in order to meet the statutory requirement with reference to rates or charges actually maintained and charged, the minimum rate contained in the schedule must be the same as the rate actually charged under the contract.

It is admitted by the defendant in oral argument and in its brief that the minimum rate contained in the original schedule filed by the plaintiff in 1946 was a reasonable rate and that it was the rate actually charged at the time. Nowhere in the statute is there any provision that the minimum rate shall be the same as the rate actually charged. If that were the case, why use the word minimum at all? Minimum has a significant meaning, and in this Act the only reasonable construction that can be placed on the word is that it represents the lowest rate which can be charged by the contract carrier, and since the Act provides that no reduction below the minimum rate shall be charged except under certain conditions, and makes no reference whatever to an increased rate by contract, it is not clear upon what basis or theory the government contends that the minimum rate and the rate charged by contract must be the same and in the event a higher rate than the minimum rate by contract is charged, an additional schedule must be filed setting forth the minimum rate as the rate actually charged by contract.

The contentions are inconsistent. Why provide for a schedule of minimum rates if the only rate to be considered by the Commission is the rate shown in the contract? And why are contract carrier and shipper protected from the publicity of their actual contract rate if that rate must be the same as the minimum rate, which is published and kept open to the public for inspection?

This amendment was made in 1940 and this statute must not be confused with that section of the statute that has to do with common carriers. The Commission itself, in proper orders and rulings, has placed a very different construction upon this statute from that contended for by the government is this case. The Commission, in its 63rd Annual Report to the Congress for the year 1949, after reciting that as to common carriers it has the authority "to prescribe the maximum or minimum rate, or the maximum and minimum, found to be reasonable," states that "as to contract carriers, our power is limited to the prescription of reasonable minimum rates."

In an opinion of Division 2, in Petroleum Products, Wyoming Points to Missoula, Mont., 32 M.C.C. 453, 455 (1942), the Commission, after discussing the tariffs with respect to common carriers, said: "A contract carrier's minimum rates, unlike common-carrier rates, do not represent a stated price for which a shipper can demand service. *The minimum rates of contract carriers, are, in fact, not rates at all in the common-carrier sense of the terms. They are simply a floor for the charges actually to be made.*" (Emphasis supplied.)

It was never the legislative intent to destroy any inherent advantages of contract carriers, and Division 5 of the Commission, in 1 M.C.C. 628, states charges of contract carriers "may be called in

question only if they are found to fall below a reasonable minimum level." Division 3, in New England M. Rate Bureau, Inc. v. Lewers and McCauley, 30 M.C.C. 651 (1941), quoted the above language of Division 5 relating to that inherent advantage and went on to say: "The Congress intended that the minimum charges prescribed should not discourage the free movement of traffic by contract carriers."

In the oral argument, as well as in the brief, the defendant contended that different rates exist if the contract carrier serves two shippers or more than one shipper. The soundness of the argument when it was orally made was not convincing and the argument in the brief is even less so. The defendant has cited a number of district court cases, and while it will be admitted that these are not controlling over this court, at the same time it may well be observed that they are not in point.

In summing up the situation, therefore, it is apparent that the first requirement by Congress was that the plaintiff should obtain a permit, which it did; second, that it should establish and observe reasonable minimum rates and charges, which it did; third, that it should file with the Commission, publish and keep open for public inspection a schedule of minimum rates and charges, which it did; and, fourth, that it file with the Commission its contract with its shipper in order that the Commission might know the rates which the plaintiff was, in fact, charging, which contract was not open to public inspection, and this the plaintiff did.

The only reasonable conclusion, therefore, to be reached is that when a contract carrier secures its permit, files a schedule showing its minimum rates, and then files a copy of the contract disclosing the actual rates charged the shipper, the statute has been complied with in full. There is no statutory authority for the power asserted by the Commission in directing that a new schedule be filed with each contract, if the contract represents an increased rate. That would destroy the purpose of filing a schedule showing minimum rates, and most certainly it would destroy the pro-

tection of the contract carrier and the shipper in keeping from the public the actual rate charged. Such an interpretation as contended for by the government is both arbitrary and capricious.

The injunction should be made permanent.